888 P.2d 468

James Lyes McMAINS, Worker–Appellee,

v.

AZTEC WELL SERVICE and Mountain States Mutual Casualty Company, Employer/Insurer–Appellees,

and

Precision Welding and Manufacturing and United States Fidelity & Guaranty Company, Employer/Insurer–Appellants.

No. 15147.

Court of Appeals of New Mexico.

Sept. 14, 1994.

David H. Brainerd, Farmington, for worker-appellee.

Katherine E. Tourek, Lisa M. Tourek, Bradley & McCulloch, P.A., Albuquerque, for employer/insurer-appellees Aztec Well Service and Mountain States Mut. Cas. Co.

Nancy Augustus, Michael J. Happe, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for employer/insurer-appellants Precision Welding & Mfg. and U.S. Fidelity & Guar.

## OPINION

HARTZ, Judge.

Precision Welding and Manufacturing and its insurer, United States Fidelity & Guaranty Company (collectively referred to as "Precision"), appeal from an adverse decision by the Workers' Compensation Administration. The claimant, James Lyes McMains ("Worker"), sought compensation benefits from Precision based on an alleged accidental injury to his lower back while working for Precision on July 13, 1992. Worker also sought benefits from Aztec Well Service and its insurer, Mountain States Mutual Casualty Company (collectively referred to as "Aztec"), for an alleged prior injury to his lower back while

working for Aztec on March 27, 1991. Precision contends on appeal that it owes no compensation benefits because (a) there was no injury arising out of Worker's employment with Precision, (b) Worker willfully suffered the 1992 injury, and (c) even if the 1992 injury was otherwise compensable, it did not result in any increased impairment. It further contends that even if it is liable for some benefits, the workers' compensation judge (WCJ) erred in apportioning liability for permanent partial disability benefits equally between Precision and Aztec and in assessing against Precision 100% of the liability for future medical benefits. By a separate memorandum opinion we affirm the decision of the WCJ on each of the issues raised by Precision on appeal, except the assessment for future medical benefits. This opinion, which contains the portion of the memorandum opinion meriting publication, addresses only future medical benefits.

## I. BACKGROUND

█ We view " 'the evidence in the light most favorable to the agency decision, but [we] may not view favorable evidence with total disregard to contravening evidence.' " *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991) (quoting *National Council on Compensation Ins. v. New Mexico State Corp. Comm'n*, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988)). Worker injured his lower back on March 27, 1991, while working for Aztec. He received treatment from Dr. Robin Glass, a chiropractor. His pain resolved by May 15, 1991, when Dr. Glass released him to return to work without restrictions. Aztec paid Dr. Glass's bills and paid Worker temporary total disability benefits from the date of injury until the date of Worker's release to return to work. Rather than returning to Aztec, Worker began work at Precision. He had a relapse of lower back pain in June 1991 and received one treatment by Dr. Glass. From that time until July 13, 1992, Worker had muscle soreness typically associated with the kind of heavy labor he performed, but he suffered no pain from his injury at Aztec, visited no doctors, and took no medication.

On July 13, 1992, Worker was cleaning up Precision's shop and preparing for the next job. He lifted and stacked several steel bars weighing about 160 pounds each and swept the shop. About 15 to 20 minutes later Worker was walking around the shop looking for his next task when he suddenly felt excruciating pain in his lower back and fell to his knees. He was not wearing a lumbar support belt, although he testified that he occasionally wore one at work. At trial on May 20, 1993, Worker testified that the pain from his injury at Precision had been unrelenting and continuous. Although he had returned to work as an ironworker with another employer in November 1992, he explained that he needed the job because he had no money, was starving, and had become homeless.

The WCJ determined, and the parties do not dispute, that Worker's claim is governed by NMSA 1978, Sections 52–1–1 to –70 (Repl. Pamp.1991) (the "1991 Act"). Because Worker's wages with his most recent employers equalled or exceeded his wages with Aztec and Precision, the parties agreed that Worker's permanent partial disability rating would equal his impairment. *See* § 52–1–26(D).

## II. APPORTIONMENT OF FUTURE MEDICAL BENEFITS

█ Precision contends that the WCJ erred in ordering it to pay for all future medical care required as a result of Worker's work injuries, without any contribution from Aztec. We agree.

The WCJ made the following four findings:

4. Worker is *entitled to* lifetime medical care for future treatment that is designated by a health care provider to be directly attributed to his work injury with [Aztec];

5. Worker is not currently *in need of* lifetime medical care for treatment of the work injury occurring at [Aztec] because the subsequent and overlapping injury to the same area of the body and the resulting treatment, the accident with [Precision] created the need for medical treatment; [sic]

24

6. Worker is *entitled to and in need of* lifetime medical care for future medical treatment as a result of the injury with [Precision]. The injury occurring at [Precision] is basically the injury that "broke the camel[']s back" and all medical treatment necessary after the July 13, 1992, work accident and injury shall be paid for by [Precision]. But for this second accident, Worker had not been in need of medical treatment;

7. Unless otherwise designated by the health care provider, [Precision] will pay one hundred percent (100%) of all future medical care Worker may need as a result of his work injuries[.]

She also entered the following conclusions of law:

3. Worker is entitled to, but not in need of, medical treatment for the March 27, 1991, injury;

4. Worker is entitled to and in need of medical treatment for the July 13, 1992, work injury with [Precision]. All medical care for the back injury resulting after July 13, 1992, shall be paid one hundred percent (100%) by [Precision.]

■ We agree that Precision has the primary responsibility for payment of future medical benefits. *See Gonzales v. Stanke–Brown & Assocs.,* 98 N.M. 379, 386, 648 P.2d 1192, 1199 (Ct.App.1982). We have recently held, however, that Section 52–1–47(D) applies to medical benefits. *Brewster v. Cooley & Assocs.* 116 N.M. 681, 685, 866 P.2d 409, 413 (Ct.App.1993). Section 52–1–47(D) states:

[T]he compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the worker if compensation benefits in both instances are for injury to the same member or function or different parts of the same member or function or for disfigurement and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

In other words, to the extent that future medical expenses are necessary as a result of Worker's accident at Aztec (and hence are payable by Aztec), Precision is entitled to a reduction in its liability. (It is undisputed that the Aztec and Precision injuries were to the same member or function.)

The WCJ's conclusions of law reject the possibility of such a reduction in Precision's liability, apparently on the ground that Aztec would be immune from any potential future liability for medical care arising from the 1991 accident. Yet, Aztec is liable for future medical care arising from the 1991 accident that would be required even if the 1992 accident had not occurred. Consequently, Aztec is immune only if there is no possibility of a need for such future medical care. That is, Aztec is immune only if there is no possibility that Worker would need future medical care for his back injury had there been no accident in 1992. Perhaps the WCJ believed that to be the case. If so, her determination was premature.

■ Unlike the practice in a typical tort case, future medical benefits cannot be denied in a workers' compensation proceeding based solely on a prediction regarding future medical needs. In *Graham v. Presbyterian Hospital Center,* 104 N.M. 490, 723 P.2d 259 (Ct.App.1986), the trial court had dismissed with prejudice a claim for future medical benefits. We held that a trial court "is without authority to limit or restrict in advance future medical benefits once a compensable injury is established." *Id.* at 491, 723 P.2d at 260. We later elaborated:

[W]here there was an accidental injury arising out of and in the course of employment, where there is a claim for current and past medical benefits together with a claim for unspecified and unspecifiable future medical benefits, and where the court finds that the defendants are not liable for the past and current medical expenses, either because plaintiff has fully recovered or because plaintiff is faking pain or for whatever reason, the court may dismiss the main part of the claim with prejudice, but it cannot dismiss the claim for future medical benefits with prejudice. In this

situation, a court may enter a judgment for future medical benefits, but such a judgment would be essentially meaningless. If plaintiff incurred medical expenses relating to a work-related injury in the future, he would still have to prove them in order to recover. Thus, the better course may be to dismiss the claim for future medical expenses without prejudice.

*Id.* at 492, 723 P.2d at 261. In *St. Clair v. County of Grant,* 110 N.M. 543, 548, 797 P.2d 993, 998 (Ct.App.1990), we further explained:

> Since the trial court cannot practically determine the worker's future medical needs at the time of entry of a judgment finding disability, Section 52-1-49 authorizes entry of a judgment directing the payment of a worker's reasonable and necessary future medical expenses and invests the court with continuing jurisdiction to enforce such orders.

In light of the WCJ's finding that Worker's disability was caused by both the 1991 accident at Aztec and the 1992 accident at Precision, she could not properly rule that future medical care could not possibly be the responsibility, even in part, of Aztec. We therefore set aside the ruling regarding apportionment of future medical benefits.

## III. CONCLUSION

For the reasons discussed above, we reverse the apportionment of liability for future medical payments.

**IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.